Assumpsit in which the plaintiff declared upon the following counts, to wit:
First. James W. Doak, who sues to the use of Peter Adams, complains of the corporation known as "The Bank of the State of North Carolina," for that whereas one Dan Alexander, on .... day of ......, 1840, was possessed, in his own proper right, of one hundred shares of capital stock in the said corporation, and, being so possessed, he, the said Dan Alexander, was arrested by a writ of capias ad satisfaciendum, at the suit of Peter Adams, returnable to Spring term of the Superior Court of law for Guilford County, begun and held at Greensboro on the third Monday after the fourth Monday in March, 1841, when and where, designing and intending to apply to the said court to be allowed the benefit of the act of the General Assembly of North Carolina passed for the relief of insolvent debtors, the said Dan Alexander afterwards, to wit, on 29 March, 1841, filed in the office of the clerk of the said court a schedule of his property and effects, and afterwards, to wit, at the term of the said Superior Court of law begun and held, etc., on the third Monday after the fourth Monday of September, 1841, filed an amended schedule of his property and effects of every description, by the filing of which schedule and amended schedule the interest of the said Dan Alexander in the one hundred shares of capital stock aforesaid was surrendered to and became vested in the said James W. Doak, who was then and still is sheriff of Guilford County aforesaid, for the use and benefit of all the creditors of him, the said Dan Alexander's creditors, according to the provisions of the act of Assembly in such cases made and provided, and the said Dan Alexander having, as aforesaid, filed his said schedule and amended schedule, and made thereby a surrender, as aforesaid, for the purpose aforesaid, of all his property and effects, including the said one hundred shares in the capital stock in the corporation aforesaid, was afterwards, to wit, at the term of the court aforesaid on the (311) third Monday after the fourth Monday of September, 1841, by the said court allowed to take the oath by law prescribed for the relief of insolvent debtors, and was then and there discharged according to the form and direction of the act of Assembly in such case made and provided, by virtue of which said surrender and discharge, and by virtue of the said act of Assembly, the said James W. Doak, sheriff as aforesaid, became entitled to the said one hundred shares of capital stock in the corporation aforesaid for the benefit of the creditors of the said Dan Alexander, and to have the same transferred to him upon the books of the said corporation; but the said corporation afterwards sold and transferred the said shares of capital stock to other persons to the plaintiff unknown, and received to its own use the money arising therefrom, *Page 227 
whereby the said corporation became liable to account to the plaintiff for the sum of money so received, which sum of money the plaintiff avers to be the sum of $10,746.08; and although the said corporation is so liable, and on the day of the sale and the transfer of the stock aforesaid, at Guilford aforesaid, did promise to account with the plaintiff for the sum so received as aforesaid, yet, disregarding, etc., though often requested, hath refused, etc. (concluding in the usual form).
Second count — After the same premises. And that by reason of the premises aforesaid the said corporation became liable to transfer the said one hundred shares of capital stock to the plaintiff for the use and benefit of the creditors of the said Dan Alexander, he, the said plaintiff, so being the sheriff of Guilford County as aforesaid, and, being so liable, the said corporation afterwards, to wit, on .... day of ......., 1841, at Guilford aforesaid, undertook and promised the plaintiff, as sheriff aforesaid, to transfer to him the stock aforesaid when the said corporation should be thereunto requested, which said shares of stock the plaintiff avers to be of the value of $10,746.08; and though afterwards, to wit, on .... day of ........, the said corporation was (312) requested by the plaintiff to transfer to him the said shares, etc., yet, disregarding, etc., it refused so to do (with the common conclusion).
Third count — after reciting the premises as before, charged the defendants with the amount of the proceeds of the sale of the stock as so much money had and received to the use of the plaintiff (concluding in the usual form).
To this declaration the defendants entered the pleas of "The general issue, payment, and set-off," and issue was joined.
By consent of the parties, a verdict was rendered for the plaintiff for the sum of $10,695, subject to the opinion of the court upon the following case:
The plaintiff declares against the defendants in assumpsit in three counts, and on the trial proved that on 21 March, 1841, Peter Adams brought suit in this court against one Dan Alexander, and at Fall Term, 1841, obtained judgment in his said action for $3,750 debt and $461.50 damages, besides costs, etc.; that the said Adams sued out, upon his said judgment, a writ of capias ad satisfaciendum, returnable to Spring term of the said court, on which the said Dan Alexander was arrested and gave bond for his appearance at the said term, to take the benefit of the statute for the relief of insolvent debtors, and on 29 March, 1841, filed in the office of the clerk of the court a schedule of his property and effects, according to the said statute, in which (among other things) was included this entry: "One hundred shares in the Bank of the State of North Carolina, pledged to the said bank for the payment of $10,500, due by said Dan Alexander"; that at Fall Term, 1841, of said court the *Page 228 
said Dan Alexander obtained leave to amend his schedule, and in (313) the schedule filed 23 October, 1841, under the said leave, was this entry: "One hundred shares in the Bank of the State of North Carolina"; that the said amended schedule being filed, the said Dan Alexander was duly admitted to take the oath by the said statute in such cases prescribed, and was by judgment of the said court then and there duly discharged according to the said statute; and it was also adjudged that the property, effects, debts, claims, and choses in action were in the plaintiff, Doak, sheriff of Guilford, for the purposes and intents in the statute declared. And the plaintiff further proved that on 6 December, 1841, Charles Dewey, under a power of attorney from the said Dan Alexander dated 16 November, 1841, sold the said one hundred shares of stock for the sum of $10,695, and directed the agent of the bank at Charlotte to apply the same to the indebtedness of the said Dan Alexander to the bank, as the same was reported to him by the said agent, and that the same was applied to the use of the bank accordingly. And here the plaintiff stopped his proof.
The defendants then proved that on 9 September, 1839, the said Dan Alexander was indebted to the defendants, at their office in Charlotte, in several notes, amounting in the whole to $9,977, and on that day gave his bond for the said sum, payable eighty-eight days thereafter, secured by a pledge of the said one hundred shares of stock, the original certificate of which he then deposited with the agent of the bank at Charlotte, and made a power of attorney attached to the said bond, authorizing the said agent as his attorney to sell the said stock in order to pay the said bond should it not be paid otherwise; a copy of which said bond and power is attached, marked (A), as a part of this case. The defendants further proved that the said bond was not paid at maturity, but that on 6 January, 1841, the same was renewed in full by the said Alexander (314) giving a new bond payable eighty-eight days after date, for the same sum, on the pledge of the same stock and renewal of the power; a copy of which said bond and power, marked (B), is hereunto annexed as a part of this case. That the said bond was not paid or renewed at maturity, and, the same remaining wholly unpaid, the said Dan Alexander on 16 November, 1841, made the power of attorney hereinbefore mentioned, authorizing the said Charles Dewey to sell the said stock, who accordingly made the sale, as already provided; a copy of which said power of attorney, marked (C), is hereto annexed as a part of this case. And the defendant further proved that the said agent at Charlotte, having received, on 9 December, Dewey's account of the sale, and directions thereupon, he on that day applied $10,375.80 to the payment of the principal and interest then due on the bond for which the stock was pledged, and deposited the residue of the proceeds of the *Page 229 
sale of stock, $371, to the credit of the said Dan Alexander; and the said defendants further proved that in July, 1839, one William F. Alexander was indebted to the bank by a note at Charlotte for $700, with the said Dan Alexander as surety; that the said Dan Alexander had assumed to pay the said debt, and had, by sundry payments made between July, 1839, and August, 1841, reduced the same to $371, for which a note of said Dan Alexander was given, payable in November afterwards; that on 15 December, 1841, the said Dan Alexander applied in person at the agency in Charlotte, drew a check for the sum of $371, so deposited to his credit, received the money, and then applied it to the payment of the said note of $371, which was thereupon delivered up to him by the said agent.
Upon these facts the defendants contended that the plaintiff was not entitled to recover (amongst other reasons) because the facts proved did not support his declaration; because, as to the debt (315) for which the stock was pledged, the said Dan Alexander had therein no interest at the time of the schedule, except a right to the stock on payment of the debt, or to the surplus of the sale after paying the debt, and no other right could or did pass to the plaintiff therein; that, as to the surplus, the plaintiff could not recover, because the same was rightfully deposited to the credit of the said Dan Alexander, and neither the defendants nor their agent having any notice whatever of the filing of the schedule or other proceedings on or before 19 December, 1841, the same was rightfully paid to him and properly received in payment of the said note, which was then bona fide surrendered to him; and that the plaintiff could not recover for want of notice to and demand upon the defendants before the bringing of the action.
On the contrary, the plaintiff contended, among other things, that the proceedings upon the ca. sa., the schedule, and the judgment, having taken place in a court of record having legal cognizance of the case, constituted notice to all the world, and the defendants were affected thereby; that the stock, when sold, was the property, not of Dan Alexander, but of the plaintiff, and the powers of sale made by the said Alexander were in law revoked, and hence the proceeds of the sale belonged wholly to the plaintiff; and, also, that as to the surplus which was not pledged, it was an illegal act of the defendants' agent, for which they were responsible, to allow the said Alexander to apply it to debt of the defendants for which the defendants had no lien on the stock whatever.
And thereupon it was agreed by the parties that the foregoing verdict should be entered for the plaintiff for the whole amount of the sale and interest thereon from the time of sale, subject to the opinion of the court upon the whole case, the sufficiency of the declaration, and the proof to support it, and of the rights of the parties upon the foregoing facts. *Page 230 
(316) And it is agreed that should the court be of opinion that the plaintiff is not entitled to recover at all, then the judgment shall be entered for the defendants. But if the court shall be of opinion that the plaintiff is entitled to recover, then judgment is to be entered for the plaintiff either for the whole amount found by the jury or for any other or lesser sum which the court shall think the plaintiff entitled to. Signed, "John Kerr for plaintiff; George E. Badger for defendants."
Upon the foregoing verdict, his Honor being of opinion that the plaintiff is entitled to recover the sum of $371, with interest from 13 December, 1841, thereon, and no more, it is considered by the court that the plaintiff recover the said sum, and have execution therefor. With which judgment both plaintiff and defendants, being dissatisfied, prayed an appeal to the Supreme Court, which was granted, security for the same being waived by both sides.
(A)
Eighty-eight days after date I promise to pay John J. Blackwell agent, etc., or order, $9,977, for value received, negotiable and payable at the agency of the Bank of the State of North Carolina at Charlotte; and to secure the payment thereof I have pledged one hundred shares belonging to me in the capital stock of said bank, contained in Certificate No. 207, issued in my name for one hundred shares, which certificate I have lodged with the agent aforesaid, whom I hereby appoint my lawful attorney to sell and transfer said stock in case of failure of payment.
In witness whereof, I have hereunto set my hand and seal this 9 September, A.D. 1840.
$9,977. DAN ALEXANDER. [SEAL]
(B)
Eighty-eight days after date I promise to pay to John J. Blackwell, agent, etc., or order, $9,977, for value received, negotiable and (317) payable at the agency of the Bank of the State of North Carolina at Charlotte; and to secure the payment thereof I have pledged one hundred shares belonging to me in the capital stock of said bank, contained in Certificate No. 207, issued in my name for one hundred shares, which certificate I have lodged with the agent aforesaid, whom I hereby appoint my lawful attorney to sell and transfer said stock in case of failure of payment.
Witness my hand and seal this 6 January, 1841.
DAN ALEXANDER. [SEAL]
(C)
Know all men by these presents, that I, Dan Alexander, of the county of Mecklenburg and State of North Carolina, do hereby constitute and appoint Charles Dewey, Esq., of the city of Raleigh, my true and lawful *Page 231 
attorney to sell and transfer one hundred shares belonging to me in the capital or joint stock of the Bank of the State of North Carolina, contained in Certificate No. 207, issued in my name, and for that purpose to make and execute all necessary acts of transfer and assignment, and to pay over the amount of such sale of stock to the agent of the said Bank at Charlotte, North Carolina, to be applied by said agent to the discharge of my indebtedness to said bank.
This power is made in furtherance of one for the same purpose, dated 6 January last, appointing J. J. Blackwood my attorney.
In witness whereof I have hereunto set my hand and seal, this 16 November, 1841. DAN ALEXANDER. [SEAL]
Test: T. M. ALEXANDER.
The plaintiff, as the assignee in law of all the (318) effects mentioned in the schedule of Dan Alexander, an insolvent debtor, dated 21 October, 1841, has brought this action of assumpsit against the bank to recover the amount of money which the one hundred shares of bank stock mentioned in the said schedule produced on the sale thereof made by C. Dewey, and by him placed in the possession of the bank. The plaintiff declares that the bank had and received the said sum of money to his use. The bank, under the plea of non assumpsit, resists the demand of all or any part of the moneys so paid in by Dewey. First, because D. Alexander, before the date of the assignment of his effects to the plaintiff, to wit, on 6 January, 1841, had pledged the said stock to one Blackwood, its agent, as collateral security to satisfy a debt of $9,977 then owing by him to the said bank. Secondly, that D. Alexander gave a check for $371, dated on 15 December, 1841, to apply so much of the money then standing in bank to his credit to the satisfaction of a debt to that amount which he then owed the said bank; and that the same had been applied accordingly without any notice at the time to the bank that Alexander had, before the date of the check, taken the benefit of the insolvent law in Guilford Superior Court. The evidence of the pledge to the bank of the aforesaid stock is to be found in the two deeds described in the case by the letters (A) and (B). The plaintiff insists that these two deeds are void as to him, by force of the act of Assembly, Rev. Stat., ch. 37, sec. 24, because they have never been registered. The answer to this objection is that the statute only declares that deeds of trust and mortgages shall not be valid against creditors or purchasers but from the registration. The instruments marked (A) and (B) are certainly not deeds of trust, and we think that they are not mortgages; they are what they profess on their face to be, *Page 232 
pledges of stock to secure the payment of the debt therein (319) mentioned. A mortgage of personal property in law differs from a pledge; the former is a conditional transfer or conveyance of the property itself; and if the condition is not duly performed, the whole title vests absolutely at law in the mortgagee, exactly as it does in a mortgage of lands; the latter, a pledge, only passes the possession, or at most is a special property in the pledge, with the right of retainer until the debt is paid. A mortgage is a pledge and more, for it is an absolute pledge, to become an absolute interest if not redeemed in a certain time. A pledge is a deposit of personal effects, not to be taken back, but on payment of a certain sum, by express stipulation, to be a lien upon it.Jones v. Smith, 2 Ves., Jr., 378; 4 Kent Com., 138 (3 Ed.); 2 Story Eq., 227. Generally speaking, a bill in equity to redeem will not lie in behalf of a pledger or his representatives, as his remedy is at law, upon a tender of the money. 2 Story Eq., 298; 1 Ves., 298. We see that there is a very marked difference between a mortgage and a pledge of personal property; and, as the Legislature has not said that pledges, to be good against creditors and purchasers, must be registered, neither can we declare them to be within the meaning and operation of the aforesaid registry act. We cannot tell but what the Legislature designedly left pledges out of the act. It seems to us, therefore, that the deeds (A) and (B) are made at the common law, and do not require to be registered to give them effect. The receipt by the bank of so much of the proceeds of the sale of the said stock as was necessary to satisfy the debt for which the stock had been pledged had been received, not to the use of the plaintiff, but to the use of the bank.
Secondly. The $371, standing in bank to the credit of D. Alexander, was legally assigned to the plaintiff before the date of the check given by Alexander to the bank for that money. The bank alleges that it had no notice of this assignment to the plaintiff when the check was received and applied in extinguishing D. Alexander's debt to that amount (320) then in bank. The answer to this allegation is that a plea of a purchase for a valuable consideration, without notice, is not available against an adverse legal title to the thing, either in a court of law or equity. It is very plain that the stock was sold by Dewey and the purchase money received by the bank with the assent of Alexander, Blackwood, and the bank; and that the sale of the stock and receipt of the purchase money were legally made are facts obliged to be admitted by the plaintiff before he can be permitted to rely on either the first or third counts in his declaration. But to whose use the money was had and received by the bank is the question now to be decided. There was no evidence in the case applicable to the second count, even if assumpsit could be maintained against the bank for refusing to transfer stock to a *Page 233 
purchaser of it. We are of opinion, upon an examination of the whole case, that all the money received by the bank, over and above the sum necessary to satisfy the debt and interest mentioned in the deed marked (B), was money had and received to the use of the plaintiff, and no other sums of money. The check given by Alexander transferred to the bank no title to the money which was standing there in his name, because it had in law been assigned to the plaintiff before the date of the check. We think that the plaintiff was entitled to recover this money under the third count in the declaration.
We find no authority that a demand was necessary before the plaintiff could sustain his action; this objection, taken by the defendant, is therefore overruled.